## McIntosh v. Colwell.

(Decided December 19, 1930.)

642

W. C. EVERSOLE for appellant.

D. G. BOLEYN for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming in part and reversing in part.

On May 6, 1928, appellant, R. R. McIntosh, instituted in the county court of Perry county a proceeding against the appellee, Allen Colwell, which he says in his brief was a forcible detainer proceeding, but which from the record is clearly demonstrated to have been a forcible entry proceeding. Colwell was found guilty of the forcible entry in the county court, and thereupon he traversed the finding and appealed to the circuit court. While the case was pending in the circuit court, and on August 26, 1929, the appellant brought a suit in ejectment against Allen Colwell to recover the possession of the same tract of land which was involved in the forcible entry proceeding. Colwell filed his answer denying that the appellant was the owner of the land or entitled to its possession, and claiming title in himself. A reply made up the issues. The ejectment suit and the forcible entry proceeding were consolidated. On a trial before the jury, at the conclusion of all the evidence the court peremptorily instructed the jury to find for Colwell and from the judgment entered on that verdict this appeal is prosecuted.

So far as the forcible entry proceeding is concerned, the judgment was clearly correct, for the evidence showed that the appellant himself put the appellee into the possession of the property in dispute, and that there was no forcible entry about it at all. Further, more than two years had elapsed from the time when the appellee

entered upon the property before the proceeding was instituted in the county court, and section 469 of the Civil Code of Practice provides:

"No inquisition of forcible entry or forcible detainer shall be taken at any time after two years from the forcible entry or detainer complained of."

It follows that, in so far as the forcible entry proceeding is concerned, the judgment of the lower court is correct, and it is affirmed.

We now come to the ejectment suit. There is not much dispute in the facts. By deed dated October 9, 1909, one Lige McIntosh conveyed the tract of land here involved to Elhanan Colwell, who married the sister of the appellee, Allen Colwell. Elhanan Colwell died in April, 1912, intestate, leaving surviving him as his only heirs and distributees at law his widow and five infant children. Some time between the date he got his deed in 1909 and his death in 1912, he sold the land to William McIntosh, the father of the appellant, for the sum of $225, which the evidence shows was paid by William McIntosh to Elhanan Colwell through a check. Immediately after the sale Elhanan Colwell moved away from the neighborhood and over into Leslie county. At the time of the sale Elhanan Colwell did not make William McIntosh a deed for the land, but, shortly after moving to Leslie county, he made a trip back to Perry county for the purpose of executing a deed to William McIntosh for the property. The county clerk upon whom they relied to draw the deed was away, and so in his absence Elhanan Colwell made William McIntosh a bond for title, intending thereafter to make the deed, but he never did make the deed. On the sale of the land to him, William McIntosh entered into the possession of it and occupied it by himself or through his tenants, paying the taxes upon it, until about the year 1923 or 1924, when by a warranty deed he conveyed the property to the appellant who, through himself or his tenants, held possession of the property, paying the taxes thereon until September, 1925, when he sold by parol a part of the land to the appellee, Allen Colwell, and put him then in possession of that part of the land so sold to him. The sale was on deferred payments, and the deed was not to be made until the property was paid for. The bond for title which Elhanan Colwell had made to William McIntosh and the

warranty deed of William McIntosh to the appellant were never recorded, but were kept by the appellant in his store and burned when that store was destroyed by fire about the year 1924. In the early fall of 1926, Allen Colwell repudiated the title of McIntosh on the theory that the title to the land in dispute had never been parted with by Elhanan Colwell and that the true owners of the land were his children and his widow. Allen Colwell thereupon procured deeds from the widow and all of the children save one, and relied upon that title to defeat the claim of the appellant. It is true that a great deal of incompetent evidence was admitted during the trial over appellee's objection in that William McIntosh and the appellant were allowed to testify concerning transactions had with Elhanan Colwell, now deceased. But as appellee's objections were all overruled to this line of testimony, its competency could not be tested by a motion for a peremptory instruction. In the case of McDermott v. Byrley Supply Co., 234 Ky. 670, 28 S. W. (2d) 988, 989, where a similar question was involved, we said:

"It is true that the testimony which appellant produced was incompetent, but nevertheless it had been admitted by the court, in one instance without objection on the part of the appellee, and in the other instances over the objection of the appellee. But whatever its character as to competency, it was relevant and was in the case. It is settled that the question of the competency or incompetency of testimony cannot be raised by a motion for a peremptory instruction which challenges the sufficiency of the evidence and not its admissibility. Mullins v. Commonwealth, 204 Ky. 445, 264 S. W. 1048; Scott v. Commonwealth, 206 Ky. 286, 267 S. W. 159. The testimony which the court had admitted was certainly relevant, though incompetent for reasons other than relevancy, and was sufficient in extent to carry the case to the jury. Nor can it be said that appellant was not prejudiced by the giving of the peremptory instruction, since his evidence upon which he relied to go to the jury was incompetent because its admission by the court authorized the appellant to rely upon its sufficiency to carry his case to the jury. Had the court excluded it, appellant might have undertaken to establish his case with other proof."

But aside from the evidence which appellee says was incompetent, there was sufficient competent testimony in the record to establish the facts above set out. The court gave the peremptory instruction it did on the theory that although appellant and his father before him had been in the adverse possession of the land since the time William McIntosh entered under his title bond from Elhanan Colwell, yet, as even at the time this suit was brought, all of the children of Elhanan Colwell had not attained their majority, the statute of limitations had not run. The fundamental error the court fell into was the fact that the statute had begun to run in the life-time of Elhanan Colwell and against him, and the intervening disabilities of the minority of his heirs did not interrupt the statute once it had begun to run. Elkhorn Land & Improvement Co. et al. v. Wallace, 232 Ky. 741, 24 S. W. (2d) 560.

The appellee insists, however, that on other grounds the peremptory was correct. He argues first that although a vendee who holds under a title bond holds adversely against his vendor, providing that all the conditions of the title bond to be performed by the vendee have been performed by him, Grigsby v. Smith, 174 Ky. 819, 192 S. W. 856, yet such was not shown to have been done in this case. There was no condition of the title bond shown for the vendee to perform other than the payment of the purchase price, and this was proved by the evidence, not only of William McIntosh, but also of Ben Couch.

Appellee's next contention is that the peremptory instruction was correct because the fifteen years necessary under the statute for the adverse possession to ripen into title had not elapsed between the time that William McIntosh entered into the possession of the land and the time when the McIntosh title was repudiated by the appellee. There is no difficulty in fixing the earliest possible time of the repudiation. The petition which was filed in August, 1929, states that *about* two years and six months before the filing of that petition, Colwell had entered into the possession of the land and had wrongfully detained it thereafter. The petition does not undertake to state accurately when Colwell entered into the property or when he repudiated the title, as it uses the expression "about two and a half years." But everybody agrees that Colwell first entered into the property about September 1, 1925, and that he entered amicably,

and that he raised the first question about the title along in May, 1926, and that he certainly held amicably, being willing to pay the balance of the purchase price of the land if McIntosh would make him a deed until at least September 1, 1926, and that it was not until this time at least that he repudiated the title of McIntosh. However, just when William McIntosh entered into the possession of the property under his title bond is not quite clear. Under the evidence in this case it was not before Elhanan Colwell bought the land from Lige McIntosh. That date is surely fixed as the 9th day of October, 1909. William McIntosh certainly entered before Elhanan Colwell died, which was in April, 1912. If William McIntosh entered into the property at least before September 1, 1911, then the fifteen years of the statute of limitations had run prior to the earliest time when the appellee repudiated the McIntosh title. The appellant in his testimony stated that in 1911 Elhanan Colwell moved over into Leslie county and that his father then entered on the land in dispute under his title bond. On his cross-examination he stated that Elhanan Colwell lived on the disputed land a year or perhaps two years after he bought it, but certainly not more than two years after he bought it. William McIntosh was very indefinite in his testimony. He was 85 years old at the time he testified and could not hear very well. He stated that he bought the land about 1911 and he thought he bought it in March and Elhanan died in April. But it is plain that the old man was not making a positive statement of the time, because he had already said he bought the land in 1911 and it is admitted that Elhanan Colwell did not die until 1912. Thus we see there was a question of fact for the jury to determine, and that was just when was the posession of this tract of land taken by William McIntosh. The appellant positively stated that it was in 1911, and although his testimony was somewhat weakened by the indistinct recollection of his father, yet it was for the jury to say whether or not it believed that the possession of this land had been taken by William McIntosh prior to September 1, 1911, as appellant testified it had. If it had, the statute had run in favor of the appellant at the time appellee repudiated his title. The court therefore erred in giving the peremptory instruction it did. The judgment in the ejectment suit is therefore reversed, with instructions to grant the appellant a new trial in conformity with this opinion.